UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GILBERTO FRANCISCO LORENZO,<br><br>            Petitioner,<br><br>    v.<br><br>PAMELA BONDI, et al.,<br><br>            Respondents. | CASE NO. 2:25-cv-02660-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the court on Gilberto Francisco Lorenzo's petition for a writ of habeas corpus. Dkt. No. 6. For the reasons described below, the Court grants the petition in part and denies it in part.

### I. BACKGROUND

Francisco Lorenzo is a citizen of Guatemala. Dkt. No. 10 at 1. On August 23, 2006, he was ordered removed from the United States to Guatemala by an Immigration Judge and was removed on December 21, 2006. *Id.* at 2. On March 12, 2008, a grand jury indicted Francisco Lorenzo and several others for Conspiracy to Harbor, Conceal, and Transport Illegal Aliens for Commercial Advantage and Private Financial Gain in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). *USA v. Andres-Francisco et al.*, No. 2:08-cr-00295, Dkt. No. 30 (C.D. Cal. Mar. 12, 2008).

In June 2017, Francisco Lorenzo was arrested for Illegal Reentry. Dkt. No. 11-1 at 3. He pleaded guilty to Improper Entry by Alien in violation of 8 U.S.C. § 1325(a)(1), and was sentenced in the District of Arizona to 30 days of imprisonment on June 29, 2017. *USA v. Lorenzo*, No. 4:17-po-24563-BGM, Dkt. No. 1 (D. Ariz. June 30, 2017). Later that summer, he was prosecuted in the Central District of California for the 2008 conspiracy charge. *USA v. Andres-Francisco et al.*, No. 2:08-cr-00295, Dkt. No. 373 (C.D. Cal. Aug. 31, 2017). On December 13, 2017, he pleaded guilty to that charge, and on April 23, 2018, he was sentenced to 12 months and one day of imprisonment and three years of supervised release. *Id.*, Dkt. Nos. 389, 419.

On July 18, 2018, Francisco Lorenzo was released from the custody of the Federal Bureau of Prisons. Dkt. No. 10 at 2. On or about August 24, 2021, he was taken into custody for a supervised release violation (failing to report to the probation officer as ordered by the Court), and on December 20, 2021, the court revoked his supervised release, sentenced him to time served, and imposed another 30-month term of supervised release. *Id.*; *see also USA v. Francisco-Lorenzo*, No. 3:21-mj-00161, Dkt. No. 1 (D. Or. Aug. 26, 2021); *USA v. Andres-Francisco et al.*, No. 2:08-cr-00295, Dkt. Nos. 433, 443, 444 (C.D. Cal.). On December 27, 2021, he was released from his time served sentence, taken into Immigration and Customs Enforcement ("ICE") custody, and served with a Notice of Intent/Decision to Reinstate Prior Order, which noted that he was subject to the August 23, 2006 Order of Removal. Dkt. No. 10 at 2. On December 28, 2021, he stated that he wished to contest this determination. *Id.* He was given a reasonable fear interview on January 3, 2022. *Id.*; Dkt. No. 6 at 5. On January 6, 2022, a Department of Homeland Security ("DHS") officer concluded that Francisco Lorenzo did not have a reasonable fear. Dkt. No 10. at 2. Francisco Lorenzo then requested review by an immigration judge. *Id.* On January 14, 2022, an immigration judge in Adelanto, California, held a review of DHS's reasonable fear determination. *Id.* at 3. The immigration judge vacated the decision of the DHS immigration officer and placed

Francisco Lorenzo in "withholding-only" proceedings. *Id.* On February 22, 2022, he was released on an Order of Supervision ("OSUP"). Dkt. No. 6 at 6.[1]

On May 4, 2023, Francisco Lorenzo filed an application for withholding of removal. Dkt. No. 10 at 3. On January 24, 2024, he testified at an individual hearing in Portland Immigration Court in support of this application. *Id.* Testimony was not completed, and on July 25, 2024, the Portland Immigration Court issued a notice for a continued hearing. *Id.* It appears from the record that the hearing was completed on March 31, 2025. *Id.*; Dkt. No. 11-3 at 2.

On February 1, 2025, Francisco Lorenzo was ordered to report in person to the ICE office in Portland, where he was detained by Enforcement and Removal Operations ("ERO"). *Id.* According to Francisco Lorenzo, "[t]he [supervisory detention and deportation officer] explained that I was being detained due to the 'change in administration.'" *Id.* at 2. Francisco Lorenzo was transferred to the Northwest ICE Processing Center ("NWIPC") the same day. Dkt. No. 10 at 3.

On April 4, 2025, an immigration judge in Tacoma denied his application for withholding of removal under 8 U.S.C. § 1231(b)(3) based on his conviction for a "particularly serious crime." *Id.*; Dkt. No. 11-3 at 8–9. However, the immigration judge granted Francisco Lorenzo's request for deferral of removal under the Convention Against Torture with respect to Guatemala. Dkt. No. 10 at 3; Dkt. No. 11-3 at 10–11. Neither the Government nor Francisco Lorenzo appealed the decision. Dkt. No. 10 at 3.

## II.    DISCUSSION

In his habeas petition, Francisco Lorenzo asserts four grounds for relief: 1) Respondents[2]

---

[1] Francisco Lorenzo asserts that he was released on bond pursuant to "8 C.F.R. § 212.S(b)," Dkt. No. 6 at 6, but this regulation does not exist. It appears that he was instead released pursuant to 8 C.F.R. § 241.13(h). Dkt. No. 9 at 3.

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

violated his procedural due process rights by detaining him without a hearing; 2) Respondents violated the Administrative Procedure Act by failing to follow regulations requiring notice and an opportunity to be heard prior to re-detention; 2) Respondents violated his substantive due process rights by re-arresting him despite his rights to "family integrity and freedom"; and 4) a potential third country removal by Respondents violates his Fifth and Eighth Amendment rights. Dkt. No. 6 at 20–23.[3] For these violations, he seeks (1) immediate release; (2) an order that "Respondents may not re-detain [him] without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since [he] was previously released"; (3) an order "that the government may not otherwise re-detain [him] unless the government: ([a]) obtains a valid travel document, ([b]) provides the valid travel document to hi[s] counsel, ([c]) offers [him] the opportunity to leave on his own within two months, and ([d]) [he] does not leave"; and (4) an order that Respondents may not remove him to a third country, or alternatively, that they may not do so without providing him notice and a meaningful opportunity to respond. Dkt. No. 6 at 23–24. Despite being detained for over six months, Francisco Lorenzo's petition raises no challenge to prolonged detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See generally* Dkt. No. 6.[4]

---

often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] The Court does not consider factual averments in the habeas petition that are not supported by citations to the record or supporting authority. *See, e.g.*, Dkt. No. 6 at 17–19 (allegations regarding third country removals and an ICE memorandum devoid of any supporting citations).

[4] Francisco Lorenzo states (incorrectly) for the first time in his reply that he "petitioned this Court to order his release from unlawfully prolonged detention[.]" Dkt. No. 12 at 1. The Court does not entertain his new arguments regarding this issue in his reply brief; "[i]t is well-settled . . . that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief." *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("In order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . .

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1052 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–94 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process

---

in a statement of additional grounds."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Calderon v. Noem*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

B.     **Statutory and Regulatory Requirements Regarding Revocation of Release**

Because Francisco Lorenzo's habeas petition is largely based on the deprivation of process he alleges he is due, the Court begins by describing the process required by applicable statutes and regulations.

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). Under 8 U.S.C. § 1231(a)(2)(A), a noncitizen "shall" be detained during the removal period. The Ninth Circuit has held "the period of detention under § 1231(a)(2) . . . passes constitutional scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). After that 90-day removal period concludes—in what is referred to as the "post-removal period"— the government's detention authority shifts to Section 1231(a)(6). *See* 8 U.S.C. § 1231(a)(6); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). "[T]he due process analysis attaches in the post-removal period[.]" *Khotesouvan*, 386 F.3d at 1301; *see also Aguilar Garcia v. Kaiser*, No. 3:25-CV-05070-JSC, 2025 WL 2998169, at *5 (N.D. Cal. Oct. 24, 2025) (finding that Petitioner did not establish a likelihood of success on the merits of his habeas petition because he was "within the 90-day mandatory detention window of Section 1231(a)(2) and due process does not require a bond hearing at least until he is in the post-removal period"). Here, the parties do not dispute that Francisco Lorenzo is in the post-removal period. *See* Dkt. No. 11-2 at 6 (United States Citizenship and Immigration Services ("USCIS") letter to Francisco Lorenzo stating that his custody status would be reviewed on March 25, 2022, after the removal period).

As Respondents acknowledge, Dkt. No. 9 at 3, the regulations governing revocation of an OSUP contemplate such revocation in only two circumstances: (1) where the noncitizen violates his conditions of release and (2) where "on account of changed circumstances, the Service

determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Alternatively, "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [USCIS] custody [a noncitizen] previously approved for release under the procedures in this section," and "[a] district director may also revoke release of [a non-citizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Discretionary revocation is permitted when, in the opinion of the revoking official:

> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or
>
> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

Upon revocation, the noncitizen "will be notified of the reasons for revocation of his . . . release," 8 C.F.R. § 241.13(i)(3), and USCIS "will conduct an initial informal interview promptly after his . . . return to [USCIS] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," including by "submit[ting] any evidence or information that he . . . believes shows there is no significant likelihood he . . . [will] be removed in the reasonably foreseeable future, or that he . . . has not violated the order of supervision." *Id.*

C.  **The Court Grants Francisco Lorenzo's Request for Release**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts analyze three factors to determine whether an administrative procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Francisco Lorenzo asserts that *Mathews* applies here, and Respondents do not contest that assertion. *See* Dkt. No. 6 at 8; *see generally* Dkt. No. 9.

"The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026); *see also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (8 C.F.R. § 241.4 "plainly provide[s] due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, requiring that only certain designated officials make custody determinations; mandating that a noncitizen receive a copy of any decision to release or detain that individual; establishing criteria and factors applicable to detention, release, and revocation determinations; and requiring certain procedural

safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews"). "Therefore, ICE violates a noncitizen's due process rights when the agency re-detains [hi]m and fails to comply with these revocation procedures." *Hall*, 2026 WL 18583, at *4.

With respect to the first *Mathews* factor, Francisco Lorenzo asserts that his interest in not being detained is "the most elemental" of liberty interests. Dkt. No. 6 at 7 (citation omitted). While he concedes that the government may detain noncitizens as part of removal proceedings, he argues—and Respondents do not contest—that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process," *Id.* at 8 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)), and that because he was previously released from custody, he has "a higher liberty interest than that of the normal ICE detainee." *Id.*

As to the second *Mathews* factor, Francisco Lorenzo avers—and Respondents do not contest—that the risk of an erroneous deprivation of liberty is high because his previous release "reflected ICE's determination that [he] was neither a flight risk nor a danger to the community." *Id.* at 8–9. The Court finds that the risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of release, thus depriving the noncitizen of process due prior to revocation. *See Asfestani v. Current or Acting Field Off.*, No. 1:25-CV-1562-SCR, 2025 WL 3677321, at *6 (E.D. Cal. Dec. 18, 2025) ("[N]umerous courts have granted habeas relief for ICE's failure to comply with post-order detention regulations." (collecting cases)); *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); *Santamaria Orellana*, 2025 WL 2444087, at *6 (regulations governing revocation of release "are intended to provide due process in that they are fairly construed to be

part of a procedural framework 'designed to ensure the fair processing of an action affecting an individual,' such that when they are not followed, prejudice is presumed"). Here, "there is absolutely no record of the decision to revoke [Francisco Lorenzo's] release, much less one that was presented to him, which reveals an even more significant due process problem because no one—not the Court, not [Francisco Lorenzo], and not even Respondents—knows with any degree of certainty what legal and factual basis was relied upon in making the determination, which hinders any meaningful challenge to the decision." *Santamaria Orellana*, 2025 WL 2444087, at *8. Indeed, Respondents do not rebut Francisco Lorenzo's contention that the only reason provided to him for his re-detention was that it was due to a "change in administration." Dkt. No. 6 at 21.

Finally, Francisco Lorenzo argues—and Respondents do not contest—that the third *Mathews* factor weighs in his favor because pre-detention process is routine and low cost. Dkt. No. 6 at 9.

Instead of disputing Francisco Lorenzo's *Mathews* analysis, Respondents argue only that none of the cases upon which he relies to support his argument "applies to detention governed by 8 U.S.C. § 1231 where, as here, Petitioner is subject to an administratively final order of removal." Dkt. No. 9 at 11. Respondents are correct that much of Francisco Lorenzo's support comes from two cases that concern noncitizens detained prior to entry of a final order of removal under 8 U.S.C. §§ 1225–26, *see* Dkt. No. 6 at 7 (citing *E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316 (W.D. Wash. 2025) and *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574 (W.D. Wash. Oct. 7, 2025)), and the Court agrees that citing cases dealing with different statutes or different subsections of statutes without explaining their relevance is generally unhelpful and does not advance a petitioner's case. But Francisco Lorenzo also cites cases finding violations of procedural due process when noncitizens subject to 8 U.S.C. § 1231(a)(6) were denied notice and an opportunity to be heard prior to re-detention. *See, e.g.*, Dkt. No. 6 at 10 (citing

*S-M-J v. Bostock*, No. 6:25-CV-01425-MTK, 2025 WL 3137296, at *5 (D. Or. Nov. 10, 2025) (finding that failure to follow regulations governing revocation of release violated petitioner's due process rights) and *Rodriguez Jimenez v. Bondi*, No. C25-2167-RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025) (finding that "due process requires that Petitioner receive proper notice and an opportunity to respond before he can be re-detained")). As noted above, Respondents provide no explanation for why Francisco Lorenzo was not provided the process that ICE regulations require. *See generally* Dkt. No. 9.

Based on the foregoing review of the *Mathews* factors, the Court finds that Respondents failed to provide Francisco Lopez with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.[5]

**D.    The Court Grants Francisco Lorenzo's Request for Certain Due Process Protections Relating to any Third Country Removal**

Francisco Lorenzo requests an order prohibiting Respondents from "remov[ing] or seek[ing] to remove [him] to a third country without notice and meaningful opportunity to respond in compliance with [8 U.S.C. § 1231(b)] and due process in reopened removal proceedings." Dkt. No. 6 at 24. He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id*. at 16.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). Where habeas petitioners raise Due Process claims and have

---

[5] Because the Court finds that Respondents violated Francisco Lorenzo's procedural due process rights, it need not consider his claim that Respondents' actions were arbitrary and capricious under the Administrative Procedure Act or that they violated his substantive due process rights. *See* Dkt. No. 6 at 11–12.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Id.* at 941–42. A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Importantly, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Francisco Lorenzo's petition makes much of the government's third party removal policies, but it does not actually allege that he is at risk of removal to a third country. *See generally* Dkt. No. 6. However, in their return to the petition, Respondents volunteer that ICE has taken steps to remove Francisco Lorenzo to Mexico. *See* Dkt. No. 9 at 11; Dkt. No. 10 at 3–4. While this issue was not raised in the usual manner, both parties have now addressed Francisco Lorenzo's potential removal to Mexico, Dkt. Nos. 9, 12, and the issue is appropriately before the Court.[6]

---

[6] Francisco Lorenzo also requests an order prohibiting Respondents from "remov[ing him] to any third

The Immigration and Nationality Act dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v.*

---

country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm[.]" Dkt. No. 6 at 24. However, the record contains no evidence of a genuine threat of such punitive removal on *him.* The Court therefore cannot conclude "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings*, 316 F.3d at 897 (quoting *W.T. Grant Co.*, 345 U.S. at 633). This request is denied.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

*Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

      1.      <u>Francisco Lorenzo's Claims are not Barred by *D.V.D.*</u>

Respondents first argue that Francisco Lorenzo's third country removal claims are barred by the *D.V.D.* class action, which involves challenges to third country removals. *See Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2153 (2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). There, the district court certified a class consisting of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

778 F. Supp. 3d at 378. The preliminary injunction in *D.V.D.* directs as follows:

> All removals to third countries, i.e., removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, *see* 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. . . . Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal. . . . If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings. *Id.* If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.

*D.V.D. v. U.S. Dep't of Homeland Sec.,* No. 25-cv-10676, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (citation modified). On June 23, 2025, the Supreme Court stayed the District of Massachusetts' preliminary injunction pending appeal in the First Circuit Court of Appeals. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

Respondents contend that "the Supreme Court's stay of the preliminary injunction entered in that case is both precedent and the result is binding on [Francisco Lorenzo] here by virtue of his status as a member of the *D.V.D.* plaintiff class." Dkt. No. 9 at 13. However, as Francisco Lorenzo points out, in seeking the stay in *D.V.D.*, the Government made both substantive and jurisdictional arguments, *see generally* Resp'ts' Application for Stay, *Dep't of Homeland Sec. v. D.V.D.*, No. 24A1153 (U.S. May 27, 2025), and in granting the stay the Court provided no reasoning, 145 S. Ct. 2153. The lack of reasoning leaves lower courts without the ability to "ascertain . . . whether [the Supreme Court] found the government likely to succeed on its jurisdictional or substantive claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025). "This distinction is especially important in this case, where one of the government's primary arguments—that the D.V.D. court had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Id*. Ninth Circuit precedent mandates notice and a hearing prior to removal to a third country, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025), and absent clear guidance from the Supreme Court that those cases are no longer good law, this Court must follow precedent. *Nguyen*, 796 F. Supp. 3d at 732. Thus, the emergency docket order in *D.V.D.* does not preclude relief here. *Id.*; *see also Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025)*; Kumar*, 2025 WL 3204724, at *7.

Respondents also contend that Francisco Lorenzo is barred from seeking this injunctive relief because "[t]he relief [he] seeks here—notice and an opportunity to raise fear-based claims prior to third-country removal—is the same relief at issue in *D.V.D*." Dkt. No. 9 at 12. Respondents cite *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013), for the proposition that in the Ninth Circuit "a district court may properly dismiss an individual complaint where the plaintiff is a

member in a class action, to the extent the individual action duplicates the claims and seeks the same relief as the class action." Dkt. No. 9 at 13.

*D.V.D.* is a civil case in which plaintiffs sought to "enjoin Defendants from failing to provide class members with written notice and a meaningful opportunity to present a fear-based claim under the *Convention Against Torture* to an immigration judge prior to deportation to a third country." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-10676, Dkt. No. 1 at 37 (D. Mass. Mar. 23, 2025) (emphasis added). In this habeas action, by contrast, Francisco Lorenzo seeks an order prohibiting respondents from "remov[ing] or seek[ing] to remove [him] to a third country without notice and meaningful opportunity to respond in compliance with [8 U.S.C. § 1231(b) more broadly] and due process in reopened removal proceedings." Dkt. No. 6 at 24. In line with other courts that have considered similar issues, the Court finds that although "there is some overlap of the legal issues involved, *D.V.D.* is not a habeas action and release from custody is not one of the remedies requested," and furthermore, while "[r]esolution of *D.V.D.* will take many months or years given its complexity," *E.D.Q.C. v. Warden, Stewart Det. Ctr.*, 789 F. Supp. 3d 1234, 1244 (M.D. Ga. 2025), Francisco Lorenzo's request relating to third country removal is part and parcel of his time-sensitive habeas petition. *Roman*, 977 F.3d at 941–42; *see also Nguyen*, 796 F. Supp. 3d at 729–30; *Arenado-Borges*, 2025 WL 3687518, at *6; *Kumar*, 2025 WL 3204724, at *7.

2. <u>DHS's Procedures Do Not Afford Due Process to Francisco Lorenzo</u>

As to the merits of Francisco Lorenzo's third country removal claim, Respondents assert that "[Francisco Lorenzo]'s claim . . . fails because it seeks prospective injunctive relief for procedures that DHS already provides as a matter of policy." Dkt. No. 9 at 12. Specifically, Respondents assert that:

> [i]f ICE were to seek [Francisco Lorenzo]'s removal to a different third country, ICE would provide him with a notice of its intent to remove him and notice as to which country. *See* [March 30, 2025 DHS memorandum on third country removals, https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.43.1_1.pdf]. This notice would allow [him] to claim fear of removal to that country. If [he] were to claim a fear of removal to that third country as well, ICE would refer him to USCIS, and USCIS would schedule [him] for an interview to determine whether it is more likely than not that he will be persecuted or tortured in that third country. *Id.*

*Id.* The DHS memorandum to which Respondents provide a link was filed in *D.V.D.* at docket entry 43-1. No. 25-cv-10676, Dkt. No. 43-1 (D. Mass. Mar. 30, 2025). On July 9, 2025, USCIS issued a memorandum to all ICE employees mandating that they adhere to the March 30, 2025 DHS memorandum "when seeking to remove [a noncitizen] with a final order of removal—other than an expedited removal order under section 235(b) of the Immigration and Nationality Act (INA)—to an alternative country as identified in section 24l(b)(l)(C) of the INA." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-10676, Dkt. No. 190-1 (D. Mass. July 15, 2025). This July 2025 memorandum provides additional guidance to ICE employees. *See id.*

Under this DHS guidance, "[i]f the United States has received . . . diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured. . . . , and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures." *D.V.D.*, No. 25-cv-10676, Dkt. No. 43-1 at 2–3. In all other cases, "[a]n ERO officer will serve on the [noncitizen] the attached Notice of Removal . . . [and] ERO will not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal." *D.V.D.*, No. 25-cv-10676, Dkt. No. 190-1 at 1.

Respondents claim that USCIS policy already provides "[t]he relief [Francisco Lorenzo] seeks—namely, notice and a meaningful opportunity to respond[.]" Dkt. No. 9 at 12. But Francisco Lorenzo seeks "notice and meaningful opportunity to respond *in compliance with the statute and due process*," Dkt. No. 6 at 24 (emphasis added), and USCIS's policy "would permit [him] to be

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17

removed within 24 hours of being served the notice—or less in 'exigent circumstances'—and provides that any reasonable fear interview should happen 'within 24 hours of referral[,]' giving [Francisco Lorenzo] mere hours or days to contact counsel, research the new country of removal, and prepare for the interview." *Kumar*, 2025 WL 3204724, at *7; *see also D.V.D.*, No. 25-cv-10676, Dkt. No. 190-1 at 1–2. "And, of course, if ICE intends to remove [Francisco Lorenzo] to a country that has provided diplomatic assurances, the policy permits it to do so without *any* notice." *Kumar*, 2025 WL 3204724, at *7; *see also D.V.D.*, No. 25-cv-10676, Dkt. No. 190-1 at 1. The policies guiding Respondents' planned removal of Francisco Lorenzo to Mexico simply do not comport with due process. *See, e.g., Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)).

In light of the foregoing, Francisco Lorenzo has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. He has demonstrated some "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the "public interest would not be disserved by a permanent injunction." *Id.*

E.     **The Court Otherwise Denies Francisco Lorenzo's Request for Injunctive Relief**

As noted above, Francisco Lorenzo requests an order that "Respondents may not re-detain [him] without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since [he] was previously released"; and "that the government

may not otherwise re-detain [him] unless the government: ([a]) obtains a valid travel document, ([b]) provides the valid travel document to hi[s] counsel, ([c]) offers [him] the opportunity to leave on his own within two months, and ([d]) [he] does not leave." Dkt. No. 6 at 23.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. However, as noted above, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings*, 316 F.3d at 897 (quoting *W.T. Grant Co.*, 345 U.S. at 633).

Nowhere in Francisco Lorenzo's petition does he allege that re-detention is likely, or that such detention is likely to occur without following proper procedures. *See generally* Dkt. No. 6. Without argument or evidence that unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For these reasons, the above requests for injunctive relief are denied.

### III.   CONCLUSION

For the reasons stated above, the petition writ of habeas corpus, Dkt. No. 6, is GRANTED IN PART and DENIED IN PART.

1. Respondents shall immediately release Francisco Lorenzo from custody subject to the terms of his most recent OSUP or on conditions otherwise compliant with 8 U.S.C.

§ 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3)).".

2. The Parties shall file a Joint Status Report by January 30, 2026, confirming that Francisco Lorenzo has been released.

3. Respondents shall not remove or seek to remove Francisco Lorenzo to a third country without affording him meaningful notice and an opportunity to respond in conformity with 8 U.S.C. § 1231(b) and due process.

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions).

Dated this 29th day of January, 2026.

Lauren King
United States District Judge